# United States Court of Appeals
## For the First Circuit

No. 03-1028

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ D. TAPIA-ESCALERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Boudin, Chief Judge,

Lourie[*] and Lynch, Circuit Judges.

Gabriel Hernández-Rivera, by appointment of the court, for appellant.

Germán A. Rieckehoff, Assistant United States Attorney, with whom H.S. García, United States Attorney, and Sonia I. Torres-Pabón, Assistant United States Attorney, Chief, Criminal Division, were on brief for appellee.

January 28, 2004

---

[*]Of the Federal Circuit, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  In 1995, José Tapia-Escalera pled guilty to possessing a kilogram of cocaine with intent to distribute.  21 U.S.C. § 841 (2000).  He was sentenced to five years of imprisonment followed by five years of supervised release. Tapia was released after his term of imprisonment but in January 2000, he violated the terms of his supervised release and, after a revocation hearing, was sentenced to ten months in prison for the violation and four years of supervised release following this new term.

In October 2002, the Probation Office notified the court by motion that Tapia had again violated the conditions of his supervised release by failing to report to the probation officer and failing to notify the office of his change of address.  In December 2002, the district court conducted a revocation hearing. As soon as the district judge stated the charges, Tapia's counsel said:

> First, the Court should know that Mr. Tapia is not going to contest the allegations, the violation of failing to report to the probation officers as directed and failing to notify a change of address within 72 hours. That is accepted.
>
> I've also asked him if it's, in fact, true that he admitted to the probation office that he was using heroin, which he has accepted, and we will not then contest that either.

Defense counsel then proposed a period of five to eleven months of home detention with electronic monitoring.  After finding

that the violations had occurred, the district judge rejected this suggestion, saying that this was the second time Tapia had violated release conditions. The judge imposed a new term of 30 months' imprisonment (but no further term of supervised release following this imprisonment). This sentence exceeded the period--apparently five to eleven months--recommended by the Sentencing Commission's table, U.S.S.G. § 7B1.4 (2002); but this table is an "advisory" policy statement rather than a formal guideline. U.S.S.G. ch. 7, pt. A introductory cmt. 3(a) (2002); United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001).

On this appeal, Tapia does not challenge the district judge's deviation from the guidelines' suggested range. Instead, Tapia first argues that the finding of liability cannot stand because there was no admission by Tapia personally, no independent evidence of his violations, and no proper waiver of his right to a hearing to contest the charges. Tapia then claims that the 30-month term of imprisonment violated a statutory cap governing maximum penalties for violating conditions of release, 18 U.S.C. § 3583(e)(3) (2000).

None of these claims were raised in the district court. Accordingly, one might expect the government to argue that the plain error standard had to be met on appeal, but it has not done so. Anyway, the attacks on liability fail whether reviewed under the plain error standard or ordinary standards of review. As for

the statutory cap issue, we think there is an error which might or might not be treated as plain under <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 732-36 (1993); but since the plain error issue is itself complicated and the government has not argued for applying the <u>Olano</u> test, we consider the statutory cap issue on the merits.

We start with the challenge to the district court's finding that Tapia violated conditions of his release. After Tapia's arrest, he was brought before a magistrate judge on November 20, 2002, for a preliminary hearing to establish probable cause.[1] The government relied on the Probation Office's report, and Tapia's counsel reserved his defense. The magistrate judge then advised Tapia and his counsel that Tapia would be held for the revocation hearing, adding:

> [Tapia] is entitled to bring his own witnesses and to challenge any evidence the Government presents as well as to cross examine any Government witness or bring his own evidence to show that the violation[s] were not committed.
>
> My instruction to the Probation Office is that the Defendant is to be provided with the discovery available to sustain the allegation or the representations made in the motion for revocation of condition of release.

---

[1]At the time of the arrest and preliminary hearing, the rules governing such proceedings were set forth in an earlier version of Fed. R. Crim. P. 32.1; one day before the December 2, 2002, hearing on the merits, a recodified version of the rules took effect but the changes do not affect our decision.

At the revocation hearing held on December 2, 2002, Tapia's counsel intervened as soon as the judge explained that Tapia had been ordered arrested because of his violation of conditions of release and had allegedly admitted that he was using heroin. Counsel then made the statement quoted earlier explaining that Tapia was not going to contest the failure to report and notify allegations and that Tapia had also "accepted" the truth of the charge that he had been using heroin. Counsel then launched immediately into his proposal for home detention.

Thereafter, in the arguments about the proper penalty, Tapia's violations were taken for granted and the district judge did no more than make a formal finding to that effect when he announced the penalty. At no point did the judge ask Tapia personally whether he committed the violations or whether he waived his right to have evidence presented on this subject; and the government neither presented nor described any independent evidence of the violations. All this, says Tapia, rendered the finding of violations improper.

This would certainly be so if the proceeding were one under Rule 11 for the taking of a plea of guilty,[2] but the

_____

[2]Among other detailed prescriptions for guilty pleas, the "court must address the defendant personally in open court" to ensure that the plea is voluntary, Fed. R. Crim. P. 11(b)(2); must advise the defendant of a whole litany of rights, Fed. R. Crim. P. 11(b)(1)(A)-(N); and in addition "the court must determine that there is a factual basis for the plea," Fed. R. Crim. P. 11(b)(3).

revocation proceeding is of a more informal character. The principal requirements laid down by Rule 32.1 for the merits hearing are notice of the alleged violation, right to counsel, an opportunity to appear and present evidence and a (qualified) right on request to question adverse witnesses. Fed. R. Crim. P. 32.1(b)(2)(A)-(D). Tapia was advised of these rights at his preliminary hearing, he had counsel, and he makes no claim that the charges were unknown to him.

Nevertheless, this court has insisted that before the defendant forgoes the opportunity in a revocation case to contest the charges, the defendant must understand his procedural rights and choose not to exercise them. United States v. Correa-Torres, 326 F.3d 18, 22-23 (1st Cir. 2003). Correa-Torres stressed that there is no talismanic formula; the judgment depends both on what the defendant was told and upon "the totality of the attendant circumstances." Id. at 23. The court there was especially concerned because the defendant himself expressed some disagreement with the truth of the charges, yet no evidence was taken or formal waiver secured. Id. at 24.

It would have simplified matters if the district court had addressed Tapia, asked him whether he understood and admitted to the charges, and obtained his personal acquiescence. But, taking account of "the attendant circumstances," we are satisfied for the reasons discussed below that Tapia did understand the

-6-

charges, knew he could contest them, and chose not to do so. In addition, it appears that there was ample evidence of the violations, which needed only be shown by a preponderance of the evidence, 18 U.S.C. § 3583(e)(3) (2000).

The motion by the Probation Office that started the proceeding was precise as to dates and details. It said that Tapia had failed to report as required, or to call to excuse his absence, on two specific dates: June 25 and August 7, 2002. It also said that during a home visit on August 15, 2002, family members had admitted that Tapia had not returned home since August 7, 2002, and that he "has been using controlled substances."

Thus, the detailed charges were known, Tapia was told of his procedural rights at the preliminary hearing, defense counsel made clear in Tapia's presence that Tapia did not contest the charges and had admitted drug use, and Tapia made no protest that any of this was unclear or inaccurate. Further, Tapia was not a novice. In addition to his prior criminal history, he had been through a guilty plea proceeding in this very case and had even been through a revocation proceeding for his first violation of release conditions.

Even now, nothing affirmatively suggests that Tapia misunderstood his options or that he had any defense to the charges against him. He did not move in the district court after sentencing to challenge the finding of violations, just the length

of the sentence. Nor has he identified on appeal anything that he misunderstood or might reasonably have misunderstood. And he has never suggested that he had a defense to any of the charges. Under these circumstances we decline to disturb the finding of liability.

Turning now to the sentence, Tapia contests the term of imprisonment--30 months--on two related grounds: first, that the proper statutory cap on his sentence was 24 months and, second, that the statute imposing the cap requires that the 10 months Tapia previously served for the violations in 2000 be subtracted from the maximum (which, depending on how we resolve the first issue, is either 24 or 36 months). The first claim is wrong--Tapia's counsel appeared to retreat from it at oral argument--but the second we accept by a very close margin.

Starting as always with the statutory language, Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 7 (1st Cir. 2003), the main provision at issue is 18 U.S.C. § 3583(e)(3) (2000), which authorizes re-imprisonment for violations of supervised release conditions and fixes caps on the possible new terms of imprisonment. It was originally enacted in 1987 but was modestly modified and reenacted in full as part of a set of amendments in 1994. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Sec. 110505, § 3583(e)(3), 108 Stat. 1796, 2016-17 (1994). At the time of Tapia's

crime and later violations, this section said in pertinent part that if a defendant violates conditions of release, the court may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision . . . except that a defendant whose terms is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony . . . .

18 U.S.C. § 3583(e)(3) (2000).

Since Tapia's original drug offense carried a forty-year maximum it is a class B felony, see 18 U.S.C. § 3559(a)(2) (2000), and so the three-year cap for revocation applies to Tapia. Tapia's counsel argued in his brief that the cap should be the two-year cap for a class C felony because the district judge found that Tapia's violation was only a grade C offense; but the district judge was there referring to the Commission's classification scheme used to fix a recommended sentence range for the violation of conditions, U.S.S.G. § 7B1.4 (2002); this is a different scheme used for a different purpose.[3]

---

[3]The Commission's scheme grades supervised release violations from A through C based on criteria set forth in U.S.S.G. § 7B1.1. This scheme has no direct connection to the felony classification scheme invoked by subsection (e)(3), which is based on criteria set forth in 18 U.S.C. § 3559(a).

By contrast the cap for <u>maximum reimprisonment</u> is a <u>binding</u> cap fixed by the statute and is keyed not to the violation of conditions but to "the term of supervised release authorized by statute for the offense that resulted in such term of supervised release."  18 U.S.C. § 3583(e)(3).  Although slightly confusing where a second violation of conditions occurs, this language necessarily refers back to the original offense of conviction, which is the place where there is a "term of supervised release authorized by statute" for a particular offense, <u>e.g.</u>, 21 U.S.C. § 841 (2000) (fixing a four-year <u>minimum</u> for Tapia's original offense).

The question how to apply the cap is much more difficult. The government says that the three-year cap applies afresh to the 30-month sentence imposed on Tapia in 2002, so that sentence was within the 36-month maximum.  Tapia argues that the cap applies to the <u>aggregate</u> of all time imposed for violating supervised release conditions growing out of the original criminal conviction; if so, then Tapia--having served 10 months for supervised release violations in 2000--could now be sentenced to only 26 months (36 months minus 10 months) for the latest violations.

If one looks only to the bare language of subsection (e)(3) quoted above, the most straightforward reading favors the government's position.  The three-year cap is described as applying wherever the defendant is found to have violated conditions of

-10-

supervised release.   18 U.S.C. § 3583(e)(3).   Nothing in the statute's language says explicitly that in calculating the cap for the second term, the first term is to be subtracted from the three-year maximum.

The language of the second sentence of subsection (h) bolsters the government's reading of subsection (e)(3). Subsection (h) imposes a cap of its own on the <u>supervised release term</u> that can be imposed after a defendant is incarcerated for violating release conditions.[4]   And this cap explicitly incorporates a "subtraction" principle: the "less any term" language means that whatever new term of supervised release could otherwise be imposed must be reduced by the term or terms of imprisonment previously served for violating supervised release.  Still, the inference in the government's favor is somewhat tempered because (h) was not drafted until well after the original (e)(3).

Nor does the government's reading create a cruel or senseless result.   True, a defendant might serve successive substantial terms for supervised release violations for the same

---

[4]"When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release."  18 U.S.C. § 3583(h) (2000).

original crime; but each one would be for a new supervised release violation. Further, if prior terms had to be aggregated, then when the maximum cap figure had been served the defendant could violate minor conditions with impunity. By contrast, subsection (h)'s own aggregation requirement usually prevents indefinite re-imprisonment because eventually no new term of supervised release can be imposed.[5]

So far the case for the government looks strong. But note that reading the statute Tapia's way is not flatly contrary to subsection (e)(3)'s language, as it might be if that subsection affirmatively said that the three-year cap should be applied without subtraction of any term of imprisonment served for a prior violation of release conditions. Indeed, subsection (e)(3) does provide that the amount of imprisonment is to be calculated "without credit for time previously served on post-release supervision" but it makes no mention of denying credit for time already served on post-release imprisonment. 18 U.S.C. § 3583(e)(3) (2000).

Even so it is surprising that the best legislative history available as to subsection (e)(3) squarely supports Tapia's reading of the statute. The 1991 Senate Report discussing

---

[5]The exception may be cases where the supervised release authorized by statute is life--as, apparently, is the case for the statute under which Tapia was convicted. 21 U.S.C. § 841 (2000); see <u>United States</u> v. <u>Cortes-Claudio</u>, 312 F.3d 17, 22-23 (1st Cir. 2002).

virtually the same language adopted in 1994 makes clear that the cap is to apply to the aggregate term of all imprisonments for release condition violations.[6]  The report contains a precise example to this effect:

> For example, in the case of a Class C felony for which the maximum supervised release term is three years, a defendant who is revoked and re-imprisoned for 18 months could be ordered to serve as much as 18 additional months on supervised release (36-month maximum term of supervised release - 18 months imprisonment = 18 months possible re-release supervision). <u>If the same defendant was again revoked, he could be re-imprisoned for not exceeding six months (24-month cap - 18 months previously-served imprisonment = 6 months allowable imprisonment)</u> and if so imprisoned, could not thereafter be placed on supervision (because the two-year imprisonment cap would have been reached).  Thus, under [the amendments], a defendant would always be credited for incarceration time against both the cap on re-imprisonment and the maximum authorized period of supervised release.

137 Cong. Rec. S7772 (daily ed. June 13, 1991) (emphasis added).

Just as the "plain meaning" of statutes is a matter of degree, so legislative history is not all of a piece.  Here, the Senate Report is no chance remark in a hearing or on the floor but is a full-scale explanation of the bill in detail, and it is clarity itself on the point at issue.  Arguably, the author of the report misread subsection (e)(3), a technical provision that was

---

[6]The amendments were not actually passed until three years later as part of the omnibus Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), but the differences are only minor.

-13-

not the main focus of legislative attention in 1994; but nevertheless this was the gloss Congress had before it when it reenacted the subsection.

In all events, perhaps prompted by the legislative history, the government conceded in several prior circuit cases that the imprisonment cap should be reduced by revocation terms already served. Five circuits have now adopted Tapia's reading of the statute, although all were in dicta, after government concessions, or both.[7] Among them, only the Fifth Circuit followed this course "dubitante," pointing out (as we have done above) that the statutory language taken alone favors the government. United States v. Jackson, 329 F.3d 406, 408 n.7 (5th Cir. 2003).

In our own case, the U.S. Attorney's office, reading the statute afresh, urges us to follow the language and disregard the legislative history. Although this is a very close call, we decline to do so. As already noted, the statute's language does not strictly forbid the interpolated limitation sought by Tapia; this result is endorsed by unusually explicit legislative history;

---

[7]United States v. Jackson, 329 F.3d 406, 407-08 & n.7 (5th Cir. 2003) (accepting government concession but expressing doubt as to its soundness); United States v. Swenson, 289 F.3d 676, 677 (10th Cir. 2002) (government conceded point); United States v. Merced, 263 F.3d 34, 37-38 (2d Cir. 2001) (government conceded point); United States v. Brings Plenty, 188 F.3d 1051, 1054 (8th Cir.1999) (in dictum accepting government concession); United States v. Beals, 87 F.3d 854, 857-58 (7th Cir. 1996) (in dictum), overruled on other grounds by United States v. Withers, 128 F.3d 1167, 1172 (7th Cir. 1997).

-14-

it has been several times conceded by the government; and five circuits have now followed the government's original concessions. To the extent that we are left with any uncertainty after these considerations, the rule of lenity applies to tip the balance in the defendant's favor.  See, e.g., United States v. Luna-Diaz, 222 F.3d 1, 3 n.2 (1st Cir. 2000).

The outcome does not threaten much harm.  A three-year cap even in the aggregate would normally suffice to punish even a succession of petty supervised release violations like failing to report.  Where the violation is more serious (such as drugs), it is independently a crime and can be independently prosecuted in a criminal case.  And, if a new Congress disliked the result spelled out in the 1991 legislative history, it could easily amend subsection (e)(3).

It turns out, although neither side mentioned the point, that Congress has altered the statute to adopt the government's position for the future.  The 2003 PROTECT Act adds to subsection (e)(3) the phrase "on any such revocation" so that the statute now reads "a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years if . . . ."  PROTECT Act, Pub. L. No. 108-21, tit. I, § 101(1), 117 Stat. 650, 651 (2003).  The intent of the 2003 Congress cannot alter the law as enacted in 1994, but reading the 1994 statute in Tapia's favor has only limited consequences.

The 2003 amendment does not apply in this case, Tapia having committed the original offense (as well as the new violations) before the latest amendment. <u>Cf.</u> <u>Johnson</u> v. <u>United States</u>, 529 U.S. 694, 701-02 (2000). Nothing in the new statute as it concerns § 3583(e)(3) suggests an effort to apply this amendment retroactively and, of course, the government has not relied upon the new amendment at all. Under the circumstances, the 1994 language as we have construed it governs the remand.

The judgment adjudicating violation of conditions of release is <u>affirmed</u> but the term of imprisonment must be reduced from 30 to 26 months and the matter is <u>remanded</u> for this purpose.

<u>It is so ordered</u>.