UNITED STATES of America,
Appellee,

v.

Frederick SMITH, Defendant,
Appellant.

No. 07–1246.

United States Court of Appeals,
First Circuit.

Heard June 7, 2007.

Decided Aug. 21, 2007.

J. Hilary Billings for appellant.

F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

Before LYNCH, Circuit Judge, SELYA, Senior Circuit Judge, and LIPEZ, Circuit Judge.

LIPEZ, Circuit Judge.

Under 18 U.S.C. § 3146(b)(1)(A), an individual who fails to appear in court as required by the terms of his release from custody is subject to punishment. As dictated by the statute, the severity of the punishment for that failure to appear depends on the severity of the maximum sentence available for the offense in connection with which the individual was released. That much is clear. Now, however, we decide a surprisingly controversial question: if the failure to appear relates to a supervised release revocation hearing, is

the relevant punishment under the statute the period of incarceration available for the supervised release violation, or the period of incarceration available for the underlying offense which led to the imposition of the supervised release condition? We conclude that the plain language of § 3146 requires us to reach the latter conclusion. The district court reached the same conclusion, and we affirm its sentence.

The facts relevant to the appeal are undisputed. Appellant Frederick Smith was convicted in Vermont of conspiracy to distribute heroin. On November 25, 2002, he was sentenced to time served—fifty-five days' imprisonment—and three years of supervised release. Subsequently, on November 18, 2004, jurisdiction over Smith's conviction was transferred from Vermont to Maine so that the United States Probation Office in Maine could supervise the conditions of his release.

Smith failed to report to his probation officer in Maine, in violation of a condition of his supervised release. On May 9, 2006, the government filed a petition to revoke his supervised release. Smith was arrested on May 17 pursuant to a warrant issued in connection with the petition. At a preliminary hearing the following day, the magistrate judge found probable cause to support the violation but ordered Smith's release conditioned on a $5000 bond and an agreement "to appear at all proceedings as required and to surrender for service of any sentence imposed." Despite this agreement, Smith failed to appear at his final supervised release revocation hearing on July 7.

On October 27, in an information, the government charged Smith under 18 U.S.C. § 3146 with failure to appear at the July 7 hearing. After waiving indictment, Smith pled guilty to that charge, and, at a separate hearing on the same day, also admitted to violating the conditions of his supervised release.

The district court held a joint sentencing hearing on the two violations. It determined that Smith's sentencing exposure for his failure to appear conviction should be based on 18 U.S.C. § 3146(b)(1)(A)(i), which prescribes punishment for failing to appear after release "in connection with . . . an offense punishable by . . . imprisonment for a term of fifteen years or more." The court explained that the "offense" in question was Smith's conviction for conspiracy to distribute heroin, rather than his subsequent violation of the conditions of his supervised release.

Applying the relevant provision of the Sentencing Guidelines, the court increased Smith's base offense level of six by nine levels. *See* U.S.S.G. § 2J1.6(b)(2)(A). The court then applied a two-level reduction for Smith's acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). The final offense level of thirteen, in combination with Smith's criminal history category of II, subjected him to a sentencing range of eighteen to twenty-four months. However, concluding that Smith's "history and circumstances" did not justify a sentence within that range, the court imposed a sentence of twelve months and one day. It also imposed a four month sentence for Smith's violation of the conditions of his supervised release, to be served consecutively with the term on the failure to appear charge.

On appeal, Smith protests that the court erred in sentencing him for his failure to appear based on his prior conviction for conspiracy to distribute heroin. He contends that the relevant charge was that of violating a supervised release condition, which was punishable by two years of imprisonment, and thus his sentencing exposure should have been based on § 3146(b)(1)(A)(iii). Then, under the Sen-

tencing Guidelines, his base offense level of six should have been increased by only three levels rather than nine. *See* U.S.S.G. § 2J1.6(b)(2)(C). After applying the two-level reduction for acceptance of responsibility, his final offense level would then be seven, which would translate to a sentencing range of only four to ten months.

▪ Smith's challenge to his sentence presents a question of statutory interpretation, which we review de novo. *See, e.g., United States v. Leahy*, 473 F.3d 401, 405 (1st Cir.2007). Our analysis must begin with the statute itself. Section 3146 provides for punishment for a failure to appear as follows:

(b) Punishment.—

(1) The punishment for an offense under this section is-

(A) *if the person was released in connection with a charge of,* or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for—

(i) *an offense punishable by death, life imprisonment, or imprisonment for a term of 15 years or more,* a fine under this title or imprisonment for not more than ten years, or both;

(ii) an offense punishable by imprisonment for a term of five years or more, a fine under this title or imprisonment for not more than five years, or both;

(iii) *any other felony,* a fine under this title or imprisonment for not more than two years, or both;

(iv) a misdemeanor, a fine under this title or imprisonment for not more than one year, or both....

(Emphasis added.) The government contends that the district court correctly held that Smith "was released in connection with a charge of" conspiracy to distribute heroin, which is "an offense ... punishable by a term of incarceration of 15 years or more." Consequently, his punishment falls under § 3146(b)(1)(A)(i), exposing him to a maximum sentence of ten years for the failure to appear. Smith, however, contends that he "was released in connection with a charge of" violating a condition of supervised release. Asserting that his exposure under that charge was only nineteen months,[1] he argues that the violation of a condition of supervised release is most closely analogous to the "any other felony" described in § 3146(b)(1)(A)(iii), thereby exposing him to a maximum sentence of two years for the failure to appear.

1. Smith was subject to up to two years of imprisonment under 18 U.S.C. § 3583(e)(3) for violating a condition of his supervised release. However, his supervised release had been twice partially revoked prior to the most recent petition for revocation. As a result he had already served five months in prison for these revocations. He contends, consistent with the revocation report filed by the probation office, that these prior five months' imprisonment meant that his total exposure for the most recent violation was nineteen months, and the government does not dispute this contention in its brief. We have interpreted the version of 18 U.S.C. § 3583(e)(3) that was in effect at the time of Smith's 2002 conviction for conspiracy to distribute heroin to reduce the maximum penalty available for a violation of a supervised release condition for time served on previous violations. *See United States v. Tapia–Escalera*, 356 F.3d 181, 184–88 (1st Cir.2004). However, the statute was amended in 2003, and the current version, which was in effect at the time of Smith's supervised release violations, does not reduce the maximum penalty for time served. Because it does not affect the outcome of the case, we find it unnecessary to decide here which version of the statute applies, i.e., whether the relevant date for determining applicability is the date of Smith's 2002 conviction or the dates of his later supervised release violations.

In asserting this construction of the statute, Smith first notes that "Congress has structured the ladder of penalties for failure to appear ... in such a way as to be proportionate to the sentencing exposure applicable to the matter in connection with which the Defendant was released." If the matter in connection with which a defendant fails to appear is punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more under 18 U.S.C. § 3146(b)(1)(A)(i), the Sentencing Guidelines prescribe an upward adjustment of nine levels under U.S.S.G. § 2J1.6(b)(2)(A). If the matter in connection with which the defendant fails to appear is punishable by imprisonment for a term of five to fifteen years under 18 U.S.C. § 3146(b)(1)(A)(ii), the upward adjustment is six levels under U.S.S.G. § 2J1.6(b)(2)(B). And, if the matter in connection with which the defendant fails to appear is punishable by imprisonment less than five years under 18 U.S.C. § 3146(b)(1)(A)(iii) or (iv), the upward adjustment is three levels under U.S.S.G. § 2J1.6(b)(2)(C).

Smith then emphasizes that the charge "in connection with" which he failed to appear was the supervised release violation, *not* the previous heroin conspiracy charge. He explains that supervised release is not explicitly mentioned in § 3146(b)(1)(A), which "applies literally to points in time procedurally which are all associated with prosecution of the original charge," not with a subsequent term of supervised release. Similarly, the commentary to section 2J1.6 of the Sentencing Guidelines explains in its "Background" provision that § 3146 "applies to a failure to appear by a defendant who was released pending trial, sentencing, appeal, or surrender for service of sentence." Again, none of these events is associated with supervised release. Consequently, Smith contends that the heroin charge is no long-er relevant. In his view, § 3146 does not contemplate that a failure to appear at a hearing on a petition for revocation of supervised release—a petition filed *after* the underlying prison sentence already has been served—will be associated with the original charge for which the supervised release was imposed. Rather, he argues, the supervised release violation is the relevant violation because it is the immediate matter in connection with which he failed to appear.

 The fundamental problem with Smith's argument is its incompatibility with the language of § 3146(b)(1)(A)(i) through (iv). Subsections (i) and (ii) refer to "an offense"; subsection (iii) refers to "any other felony"; and subsection (iv) refers to "a misdemeanor." *Id.* The use of the phrase "any other felony" in subsection (iii) indicates that the "offenses" described in subsections (i) and (ii) also must be "felonies." Similarly, the structure of the statute reveals that the "any other felony" in subsection (iii), and the "misdemeanor" in subsection (iv), must be "offenses." Thus, to fall within the language of § 3146(b)(1)(A)(i) through (iv), a violation of a condition of supervised release must, at a minimum, be an "offense" that qualifies as either a felony or a misdemeanor.

Smith argues that a felony is "classically defined" as an offense punishable by one year or more, while a misdemeanor is punishable by less than a year. *See* 18 U.S.C. § 3559(a). Thus, he contends, we should interpret the words "any other felony" to mean "any matter for which there is sentencing exposure of one year or more." Because the maximum sentencing exposure associated with his supervised release violation was two years, he asks us to hold that it qualifies as "any other felony" within the meaning of § 3146(b)(1)(A)(iii). The government, for its part, asks us to rely on

the *Black's Law Dictionary* definition of "felony." [2] It argues that violation of supervised release is not a "felony" within that definition.

Both parties have failed to point out that Congress has provided statutory definitions for the relevant terms. 18 U.S.C. § 3156(a) provides definitions for §§ 3141–3150. The term "felony" is defined as "an offense punishable by a maximum term of imprisonment of more than one year." *Id.* § 3156(a)(3). And the term "offense" is defined as "any criminal offense, other than [certain military offenses], which is in violation of an Act of Congress and is triable in any court established by an Act of Congress." *Id.* § 3156(a)(2). Accordingly, the real issue is whether a violation of a supervised release condition is a "criminal offense" that violates an "Act of Congress" and is "triable" in federal court.

We resolve that issue against Smith. First, there is no support for the proposition that a supervised release violation is a "criminal offense." *See Johnson v. United States,* 529 U.S. 694, 700, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000) ("Although [supervised release] violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt."); *United States v. Marvin,* 135 F.3d 1129, 1138 n. 14 (7th Cir.1998) ("An individual's violation of the conditions of his supervised release is not a crime, but the violative conduct can constitute criminal behavior if it satisfies the elements of a particular offense."); *United States v. Green,* 797 F.2d 855, 858 (10th Cir.1986) ("[A] violation of parole is not, in

itself, a criminal offense."). As noted in these precedents, the procedural mechanisms relating to a supervised release revocation hearing demonstrate that the alleged violation at issue in such a hearing is not a crime. Importantly, the standard of proof in a supervised release revocation hearing is a preponderance standard, 18 U.S.C. § 3583(e)(3), rather than the reasonable doubt standard common to all criminal proceedings, and the rules of evidence do not apply, Fed.R.Evid. 1101(d)(3).

Also, in providing for the revocation of supervised release, 18 U.S.C. § 3583(e)(3) indicates that a court should follow the applicable Federal Rules of Criminal Procedure. These rules emphasize that a proceeding to revoke supervised release is not a trial. Rule 32.1(b)(2) provides for a "hearing" rather than a "trial," and Rule 26.2, which provides the procedures for such a hearing, states that these procedures apply at "trial" *and* at other proceedings, including a Rule 32.1 "hearing," *see* Fed.R.Crim.P. 26.2(g). From the notion that the supervised release revocation proceeding is a "hearing" rather than a "trial," it follows logically that a supervised release violation is not "triable" in federal court. Relatedly, Federal Rule of Criminal Procedure 32.1(a)(6) explains that the magistrate judge "may release or detain the person under 18 U.S.C. § 3143(a) pending further proceedings." Section 3143(a) governs release pending sentence, while a different provision—§ 3142—governs release pending trial. This distinction also reinforces the notion that a supervised release violation is not a "triable" offense, but, rather, a violation that may result in an increase in a sentence.[3]

---

**2.** That term is defined as "[a] serious crime usu[ally] punishable by imprisonment for more than one year or by death." *Black's Law Dictionary* 651 (8th ed.2004).

**3.** The fact that release pending a hearing on a supervised release violation is governed by § 3143(a), the statute that governs release pending sentence, is particularly significant because it also buttresses the government's

Finally, the violation of a supervised release condition is not a violation of an "Act of Congress." In Smith's case, the condition that he report to his probation officer was incorporated in an order from a federal judge, and thus his failure to do so did not violate a congressional act. Of course, federal judges are statutorily required to order certain conditions in conjunction with supervised release. *See* 18 U.S.C. § 3583(d). However, the violation of such a mandatory condition would still constitute a violation of the federal judge's order, rather than a violation of the statute itself.

In light of the foregoing analysis, we conclude that the violation of a supervised release condition is not a "criminal offense" in violation of an "Act of Congress" that is "triable" in federal court. Thus, it cannot qualify as a felony within the meaning of 18 U.S.C. § 3146(b)(1)(A)(iii). Consequently, we cannot accept Smith's contention that Congress intended us to analogize his violation to that described in subsection (iii) based on the equivalent maximum sentencing exposure. To so hold would be to ignore Congress' explicit use of the term "felony" in § 3146(b)(1)(A)(iii).[4]

The dissent does not argue that our reading of the statute would produce an absurd result. Instead, it contends that our interpretation disregards Congress' clear statutory intent, to which we owe deference if "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). This argument illustrates the danger of ignoring the plain language of a statute in favor of an attributed legislative intent divined by the court.

The dissent contends that "Congress's intent was plainly to create a hierarchy of penalties geared to the magnitude of the sentence that was at stake in connection with the proceeding for which the defendant failed to appear." This statement of congressional intent is based on language that does not appear in the statute. The statutory language correlates the severity of the penalty with the seriousness of the charge "in connection with" which the individual "was released." The statute does not correlate the severity of the penalty with the sentence at stake *in the particular proceeding* for which the defendant failed to appear. The language that Congress chose ("if the person was released in connection with a charge of"), by its plain terms, applies to an individual on supervised release in connection with the charge underlying the supervised release. On the theory that Congress means what it says, Congress' intent was to link the potential severity of punishment for the failure to appear at a supervised release revocation hearing to the seriousness of the offense that originally led to the supervised release.[5] Indeed, Congress might easily

---

argument that the relevant offense is the underlying heroin conspiracy charge. Because the court had not yet found Smith in violation of the supervised release condition at the time of his release, he could not be released "pending sentence" for that charge. Thus, the charge for which a sentence was pending had to be the original heroin conspiracy charge.

**4.** The dissent claims that our interpretation is based on "isolated words and phrases." To the contrary, the words and phrases we have

addressed here—"in connection with," "offense," and "felony"—are at the heart of the statute. Their meaning controls the application of the statute.

**5.** The dissent's argument is premised on the notion that the general phrase "in connection with" should be interpreted in light of the subsequent references to events preceding the service of one's original sentence. The argument is that the general phrase is limited to the commitment of a defendant to appear for

have determined that a defendant whose supervised release stems from a more serious underlying offense should be subject to a more severe penalty when he fails to appear at a hearing regarding the revocation of that supervised release.

The dissent cites the "perverse outcomes" that result from relying on the plain language of § 3146. In making this argument, the dissent focuses exclusively on the proverbial worst case scenario: that someone like Smith, who faced a maximum sentence of nineteen months for revocation of his supervised release term, could face ten years' imprisonment for the failure to appear at his supervised release revocation hearing even though he was only sentenced to time served (fifty-five days) for the underlying drug offense. This approach overlooks the fact that, in the next case, Smith could be an individual with a long criminal record who was on supervised release after serving most of a lengthy sentence for a crime of violence. For such an individual any violation of a supervised release would be a matter of grave concern, and so too would be the failure to appear at the supervised release revocation hearing. Under these circumstances, it would hardly be a perverse outcome to determine the sentencing consequences of this failure to appear on the basis of the sentencing exposure for the underlying offense rather than the sentencing exposure for the violation of supervised release.

Ultimately, as with any other sentence imposed pursuant to a statute that provides maximum penalties for particular crimes, the district courts may impose a below-Guidelines sentence, so long as the sentence imposed in a particular case is reasonable. *See United States v. Booker,* 543 U.S. 220, 261–62, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *United States v. Jiménez–Beltre,* 440 F.3d 514, 518–19 (1st Cir. 2006)(en banc), *cert. denied,* — U.S. —, 127 S.Ct. 928, 166 L.Ed.2d 715 (2007). Indeed, the district court in this case considered Smith's history and circumstances and concluded that a sentence substantially below the Guidelines range was appropriate. This sentence demonstrates that our adherence to the plain language of § 3146 does not interfere with the district court's "flexibility . . . to individualize sentences where necessary," *Booker,* 543 U.S. at 264–65, 125 S.Ct. 738, thus foreclosing the dissent's concern for a "grossly disproportionate outcome."

Even if one thought that the result here was odd (and we do not), it is not our role to revise the plain language of the statute simply because we think that an alternative construction is more sensible. The dissent opts for a substantial rewriting of the statute, in the guise of interpretation, "as the defendant would have us construe

court proceedings prior to the original sentence. However, there is no need to resort to canons of statutory interpretation here because the plain language of the statute addresses the situation of an individual who is on supervised release, for whom every court appearance is "in connection with" the original charge that led to that supervised release. Moreover, if there was a need to resort to canons of statutory interpretation, the dissent overlooks a competing canon of interpretation: "The rule that penal laws are to be construed strictly, [which] is perhaps not

much less old than construction itself." *United States v. Wiltberger,* 5 Wheat. 76, 18 U.S. 76, 95, 5 L.Ed. 37 (1820). Thus, "[t]he intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction." *Id.* at 95–96. In other words, when the legislature has defined a crime or punishment, its words are to be applied literally. Given the dissent's concession at the outset that the result we reach is consistent with the literal terms of the statute, that should be the end of the matter.

it."[6] ( Such a result confuses the legislative and judicial roles in a "criminal case.").[7] After all, "the power of punishment is vested in the legislative, not the judicial department. It is the legislature, not the [c]ourt, which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 5 Wheat. 76, 18 U.S. 76, 95, 5 L.Ed. 37 (1820). Moreover, if a result is "odd, but it is not absurd," "it is up to Congress rather than the courts to fix it." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); *see also Dodd*, 545 U.S. at 359–60, 125 S.Ct. 2478 ("It is for Congress, not this Court, to amend the statute if it believes that [the statutory language leads to undesirable consequences].").

Given these considerations, and given the plain language of § 3146, we conclude that the relevant "charge" in connection with which Smith failed to appear was his prior conviction for conspiracy to distribute heroin. The district court properly concluded that this conviction qualifies as an "offense punishable by ... imprison-

ment for a term of 15 years or more" under § 3146(b)(1)(A)(i). The sentence imposed by the court under section 2J1.6(b)(2)(A) of the Sentencing Guidelines was congruent with that statute.

*Affirmed.*

SELYA, Senior Circuit Judge, dissenting.

I agree with my colleagues that the language of 18 U.S.C. § 3146(b)(1)(A), read literally, appears to validate the sentencing rationale employed by the district court. But appearances can be deceiving, and the majority's result is ultimately both counter-intuitive and at odds with the tiered approach set out in the statute as a whole. *See id.* § 3146(b).

Judges are not mere grammarians, and the responsibility for statutory interpretation involves more than the application of hard-and-fast syntactical rules to isolated words and phrases. Thus, even plain meaning may succumb to some other, more realistic interpretation if that is necessary to effectuate Congress's discernible intent. *See Holy Trinity Church v. Unit-*

---

6. To accept the dissent's interpretation of the statute, one would have to rewrite the statute to excise most of the critical terms and phrases—"in connection with," "offense," and "felony"—we have discussed above. The revised version would read something like this:

 (1) The punishment for an offense under this section is—
 (A) if the person failed to appear for a proceeding for which the penalty at stake was—
 (i) death, life imprisonment, or imprisonment for a term of 15 years or more; a fine under this title or imprisonment for not more than ten years, or both;
 (ii) a term of five years or more; a fine under this title or imprisonment for not more than five years, or both;
 (iii) a term of less than five years but more than one year; a fine under this title or imprisonment for not more than two years, or both;

 (iv) a term of less than one year; a fine under this title or imprisonment for not more than one year, or both....

7. The authority that the dissent cites for the proposition that one may disregard the literal language of a statute in order to effectuate Congress' intent is less robust than the dissent implies. Although the Court acknowledged this principle in *Griffin* as a matter of theory, that case ultimately did not hold that the literal language of the statute contravened the intentions of the drafters. *Griffin*, 458 U.S. at 571, 102 S.Ct. 3245. The dissent's other citations supporting this proposition are all to civil cases, *see CIR v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965); *Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892). There appear to be very few Supreme Court cases involving the definition of crimes and punishments to be imposed for those crimes that embrace the proposition adopted by the dissent.

*ed States*, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.").

In construing statutes, courts have some freedom to depart from literal meaning if doing so is necessary to preserve the statutory purpose. *C.I.R. v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965). As Justice Rehnquist once put it, "in rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). When that occurs, "those intentions must be controlling." *Id.* The trick, of course, is to recognize those rare cases.[8]

Given the structure of the statutory scheme, I have come to conclude that this is one of them. Congress's intent was plainly to create a hierarchy of penalties geared to the magnitude of the sentence that was at stake in connection with the proceeding for which the defendant failed to appear. Had Congress actually considered the application of this statute to failures to appear at supervised release revocation hearings—which I doubt—I believe that it would have written the statute as the defendant would have us construe it.

Although the majority engages in a meticulous dissection of the vocabulary of the statute, the result of that exercise verges on the Kafkaesque. In this instance, I find such slavish devotion to literalism unwise and unwarranted.

The majority's reading of 18 U.S.C. § 3146 subjects previously convicted individuals to penalties that bear no relationship to the non-appearance of which they are presently accused. As this case illustrates, that approach creates perverse outcomes. The majority's construction of the statute could expose someone like Smith, who faces a maximum sentence of nineteen months for revocation of his supervised release term, to ten years imprisonment for a simple failure to appear at his revocation hearing. Such a grossly disproportionate outcome is at variance with the sentencing decision reached by the original sentencing judge, who sentenced Smith to time served and supervised release on the underlying conspiracy charge, presumably based on the judge's own complex determination of aggravating and mitigating factors. We should not presume that Congress intended such an inequitable result. *Cf. United States v. Councilman*, 418 F.3d 67, 83 (1st Cir.2005) (en banc) (suggesting courts can apply the rule of lenity if, "after seizing everything from which aid can be derived, [a court] can make no more than a guess as to what Congress intended") (quoting *Reno v. Koray*, 515 U.S. 50, 65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995)).

Ignoring the structure and purpose of the statute, the majority insists that Congress must mean what the statute literally appears to say. To justify this wooden approach, it notes that the statute correlates the severity of the penalty with the seriousness of the charge "in connection with" which the individual "was released." *Ante* at 32–33. From this, it leaps to the conclusion that Congress's intent must

---

**8.** The majority, *ante* at 33 n. 5, cites *United States v. Wiltberger*, 5 Wheat. 76, 18 U.S. 76, 5 L.Ed. 37, (1820), for the proposition that "where there is no ambiguity in the words [of a criminal statute], there is no room for construction." *Id.* at 95. Their reliance on *Wiltberger* strikes me as perverse. In that case,

Chief Justice Marshall conceded that "though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature." *Id.* He added that courts can depart from plain meaning in particularly strong cases. *Id.* at 96. That is precisely my point.

have been to apply the statute to post-conviction, post-sentencing supervised release revocation hearings and to affix the penalty with reference to the offense that originally led to the supervised release. *See id.* This conclusion flouts the statute's evident purpose. It also rests on shaky ground as a matter of statutory construction.

It is a familiar canon of construction that words in a statute are to be interpreted in accordance with the company that they keep. *See, e.g., James v. United States,* — U.S. ——, 127 S.Ct. 1586, 1605, 167 L.Ed.2d 532 (2007). Application of the phrase "released in connection with a charge of" therefore must be read in context.

Section (b)(1)(A) applies to failures to appear at hearings "if the person was released in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for [a particular offense]." The listing is chronological and the language, read literally, appears to apply only to failures to appear in proceedings occurring from the time that charges are brought through direct appeal or certiorari after conviction. There is no suggestion that the statute applies to proceedings that post-date conviction, sentencing, and appellate review. Under those circumstances, elevating literalism over practicalities and using the underlying offense to shape punishment in hearings unrelated to the original charge seems inconsistent with the precisely configured time frame of section (b)(1)(A).[9]

The majority further chides me for focusing on "the proverbial worst case sce-

nario." *Ante* at 32–33. It argues that under *United States v. Booker,* 543 U.S. 220, 261–62, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), district judges retain flexibility to impose below-guidelines sentences, thus foreclosing any concern for grossly disproportionate outcomes. This argument turns a blind eye to the likelihood that the majority's reading of the statute will make below-the-range sentences (like the one in the instant case) the norm rather than the exception. Something is quite wrong with that picture; the very fact that, under the majority's construction, a guidelines sentence will routinely result in a grossly disproportionate outcome renders that construction suspect. *Cf. United States v. Rita,* — U.S. ——, 127 S.Ct. 2456, 2464–65, 168 L.Ed.2d 203 (2007) ("[I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.").

Judge Learned Hand once wrote that, when construing statutes, "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary." *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.1945). I fear that today's decision runs contrary to that wise advice and erects just such a semantic fortress. Left to my own devices, I would vacate Smith's sentence and remand for resentencing in accordance with what I perceive to be Congress's vividly clear intent.

I respectfully dissent.

---

**9.** The majority's charge that this interpretation would materially rewrite the statute, *ante* at 34 n. 6, is flatly wrong. It would only read the critical phrase—"if a person was released in connection with a charge of"—narrowly, so that it would not apply to proceedings that post-date conviction, sentencing, and direct appellate review. This reading is preferable not only because it leads to more sensible results but also because it is more consistent with the statute's structure and purpose.