**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>MATTHEW STEVEN JENSEN,<br>*Defendant-Appellant*. | No. 11-10472<br><br>D.C. No.<br>2:11-cr-00034-<br>RLH-RJJ-1<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted
September 13, 2012—San Francisco, California

Filed January 14, 2013

Before: J. Clifford Wallace, Susan P. Graber,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Criminal Law

Affirming a sentence, the panel held that the maximum prison term for failure to appear for service of sentence following revocation of supervised release, in violation of 18 U.S.C. § 3146, is determined by looking to the underlying criminal offense, rather than to the intervening violation of supervised release.

### COUNSEL

Brenda Weksler, Assistant Federal Public Defender, Las Vegas, Nevada, for Defendant-Appellant.

Peter S. Levitt, Assistant United States Attorney, Las Vegas, Nevada, for Plaintiff-Appellee.

### OPINION

GRABER, Circuit Judge:

Defendant Matthew Steven Jensen appeals his sentence of 27 months' imprisonment, following a conviction for failing to appear in violation of 18 U.S.C. § 3146. The parties dispute which subsection of 18 U.S.C. § 3146(b)(1)(A)

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

establishes the appropriate maximum prison term in this circumstance: subsection (ii), which carries a five-year maximum, or subsection (iii), which carries a two-year maximum. Reviewing de novo this question of statutory interpretation, *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) (per curiam), we join the First, Sixth, and Seventh Circuits in holding that we determine the applicable maximum by looking to the underlying criminal offense, rather than to an intervening violation of supervised release. Here, because the underlying offense was punishable by a prison term of five years or more, the five-year maximum prison term found in subsection (ii) applies. Accordingly, we affirm.

In 2009, Defendant pleaded guilty to one count of unlawful possession of a mail key in violation of 18 U.S.C. § 1704. That offense carried a maximum prison term of ten years. *Id.* The district court sentenced Defendant to 12 months' imprisonment, followed by 36 months of supervised release.

Soon after his release from prison, Defendant violated the terms of his supervised release. That violation carried a maximum sentence of two years. *See* 18 U.S.C. § 3583(e)(3) (providing a maximum of two years' imprisonment when the underlying offense is a class C felony); *id.* § 3559(a)(3) (providing that a crime with a statutory maximum of ten years' imprisonment (such as 18 U.S.C. § 1704) is a class C felony). After a hearing, the district court revoked supervised release and remanded Defendant to the custody of the United States Marshal for a term of 14 months' imprisonment. The court ordered Defendant to surrender himself to the custody of the Marshal by noon the next day, but he failed to surrender.

After his capture, Defendant pleaded guilty to one count of failure to appear for service of sentence in violation of 18 U.S.C. § 3146. The district court then imposed a sentence of 27 months in prison, which is at issue here.

Title 18 U.S.C. § 3146(a) provides that whoever violates the statute "shall be punished as provided in subsection (b)."[1] Subsection 3146(b) does not contain a fixed maximum term of imprisonment. Instead, to find the maximum, one consults a graduated table that is keyed to the statutory maximum attached to the underlying offense:

> (1) The punishment for an offense under this section is—
>
> (A) if the person was released in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for—
>
> (i) an offense punishable by death, life imprisonment, or imprisonment for a term of 15 years or more, a fine under this title or imprisonment for not more than ten years, or both;

---

[1] The only issue before us—and the only legal issue raised before the district court—is whether the 27-month sentence exceeds the statutory maximum. Defendant has not contested that he violated 18 U.S.C. § 3146. We therefore need not and do not decide whether the element of § 3146 requiring that the defendant be "released under" chapter 207 of 18 U.S.C. is satisfied when a person is released pending execution of sentence for a violation of supervised release.

(ii) an offense punishable by imprisonment for a term of five years or more, a fine under this title or imprisonment for not more than five years, or both;

(iii) any other felony, a fine under this title or imprisonment for not more than two years, or both; or

(iv) a misdemeanor, a fine under this title or imprisonment for not more than one year, or both; and

(B) if the person was released for appearance as a material witness, a fine under this chapter or imprisonment for not more than one year, or both.

*Id.* § 3146(b).

The dispute in this case is which "offense" is relevant: Defendant's criminal offense or his violation of supervised release. If the mail-key offense is the measuring stick for purposes of § 3146(b)(1)(A), then subsection (ii) applies, and the statutory maximum for failure to appear is five years. By contrast, if his violation of supervised release is the relevant underlying offense for purposes of § 3146(b)(1)(A), then subsection (iii) applies, and the statutory maximum for failure to appear is two years.

"Statutory interpretation begins with the text." *United States v. O'Donnell*, 608 F.3d 546, 549 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1837 (2011). As relevant here, the statute

applies to "an *offense* punishable by imprisonment for a term of five years or more" or "any other *felony*." 18 U.S.C. § 3146(b)(1)(A)(ii)–(iii) (emphases added). The statute defines the emphasized terms:

> As used in sections 3141–3150 of this chapter—
>
> . . . .
>
> (2) the term "offense" means any *criminal* offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is *in violation of an Act of Congress* and is *triable* in any court established by Act of Congress;
>
> (3) the term "felony" means an offense punishable by a maximum term of imprisonment of more than one year[.]

*Id.* § 3156(a) (emphases added). In sum, the statute defines an "offense" or "felony" as an offense that is (1) criminal; (2) in violation of an Act of Congress; and (3) triable in federal court.

As the First, Sixth, and Seventh Circuits have held in cases addressing this identical issue, a violation of supervised release meets *none* of those three requirements. *United States v. Phillips*, 640 F.3d 154 (6th Cir. 2011); *United States v. Smith*, 500 F.3d 27 (1st Cir. 2007); *see also United States v. McIntosh*, No. 11-3535, 2012 WL 6172571, at *6 (7th Cir. Dec. 12, 2012) (looking to underlying crime and text of § 3146(b)); *United States v. Woodard*, 675 F.3d 1147,

1151–52 (8th Cir. 2012) (agreeing with the analysis in *Phillips* and *Smith* in a different context). First, a violation of supervised release is not necessarily criminal. *Woodard*, 675 F.3d at 1152; *Phillips*, 640 F.3d at 157; *Smith*, 500 F.3d at 31; *see United States v. Marvin*, 135 F.3d 1129, 1138 n.14 (7th Cir. 1998) ("An individual's violation of the conditions of his supervised release is not a crime . . . ."). Second, a violation of supervised release contravenes a court order, not an Act of Congress. *Woodard*, 675 F.3d at 1152; *Phillips*, 640 F.3d at 157–58; *Smith*, 500 F.3d at 32. Finally, a violation of supervised release results in a "hearing," not a "trial," and the ordinary rules governing criminal trials, such as the burden of proof and the rules of evidence, do not apply. *Woodard*, 675 F.3d at 1152; *Phillips*, 640 F.3d at 158; *Smith*, 500 F.3d at 31; *see generally* Fed. R. Crim. P. 32.1. Accordingly, a violation of supervised release does not meet the statutory definition of "offense" or "felony." By contrast, the underlying criminal offense—here, unlawful possession of a mail key—plainly meets the statutory definition: It is a criminal offense, violating an Act of Congress, that is triable in federal court.

Defendant does not dispute any of that analysis. Instead, he points to the introductory part of § 3146(b)(1)(A): "if the person was released in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for . . . an offense." In Defendant's view, he absconded while awaiting surrender for service of sentence for his *violation of supervised release*, not for his original criminal offense. He argues that we should adopt that view because, he asserts, none of the predicate situations listed in the statutory text applies if one interprets the relevant "offense" as his original criminal offense. We disagree for three independent reasons.

First, the specific statutory text governing releases while awaiting "surrender for service of sentence" applies here. Defendant had been "released . . . while awaiting . . . surrender for service of sentence . . . after conviction for . . . an offense." That provision applies most naturally to releases while awaiting surrender for service of the *original* criminal sentence. But it is not limited to those situations. Title 18 U.S.C. § 3583(e)(3) authorizes a district court to "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release." In other words, when a district court revokes supervised release, it alters the original criminal sentence by requiring the defendant to serve his or her term of supervised release in prison. Although we may commonly think of this additional punishment as a *new* sentence, it is better understood as a modification of the original criminal sentence because its terms relate to the original crime and sentence. For example, the length of the original term of supervised release constrains the length of the term of imprisonment. *Id.* When a defendant surrenders for service of further imprisonment after violating supervised release, he or she has surrendered for service of sentence after conviction for the original criminal offense.

Second, even if the specific statutory text governing releases while awaiting "surrender for service of sentence" did not apply, we read the statute as providing a more general catchall: "if the person was released in connection with a charge of . . . an offense [or] . . . any other felony." 18 U.S.C. § 3146(b)(1)(A)(ii)–(iii). Here, Defendant was "released in connection with a charge of" his original criminal offense. That text may apply most often to releases directly related to the original criminal charge. But we do not read the quoted phrase—governing all releases "*in connection with*" a charge

of an offense—as covering only those situations. *Id.* (emphasis added). The government's petition for revocation of supervised release and all other documents were filed under the same criminal case number as the original criminal offense. We have no trouble concluding that Defendant's release was "in connection with" the original criminal charge.

Finally, and more generally, Defendant's argument loses sight of the definition of "offense," which clearly excludes a violation of supervised release.

We agree with the First, Sixth, and Seventh Circuits that the text clearly answers the interpretive question presented. We may ignore the plain meaning of a statute only if "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). Nothing in the text of § 3146 or elsewhere suggests that Congress clearly intended that a violation of supervised release constitutes an "offense" for purposes of § 3146; indeed, Congress used words that foreclose that possibility. Moreover, the operation of the statute remains perfectly logical. "Congress might easily have determined that a defendant whose supervised release stems from a more serious underlying offense should be subject to a more severe penalty when he fails to appear at a hearing regarding the revocation of that supervised release." *Smith*, 500 F.3d at 32–33. In other words, the literal interpretation of the statute leads to results that are neither absurd nor odd. "Even if one thought that the result here was odd (and we do not), it is not our role to revise the plain language of the statute simply because we think that an alternative construction is more sensible." *Id.* at 33. "[I]f a result is 'odd, but it is not absurd,' 'it is up to Congress rather than the courts to fix it.'" *Id.* at 34

(quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005)).

**AFFIRMED.**