FILED
United States Court of Appeals
Tenth Circuit

August 23, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

BRICE HERNANDEZ,

      Defendant-Appellant.

No. 10-8086

---

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:04-CR-00027-WFD-2)**

---

Eric J. Palen, Palen Law Offices, LLP, Glendo, Wyoming, for Defendant-Appellant.

David A. Kubichek, Assistant United States Attorney (Christopher A. Crofts, United States Attorney, with him on the brief), District of Wyoming, Casper, Wyoming, for Plaintiff-Appellee.

---

Before **GORSUCH, HOLLOWAY**, and **MATHESON,** Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

     Brice Hernandez claims that he is stuck in a vicious cycle. Originally

convicted of possessing an unregistered firearm seven years ago, he served his

time and won supervised release. But when he violated the conditions imposed

on his release he found himself back in prison. Over the years this process has now repeated itself no fewer than four times. In this appeal, Mr. Hernandez asks us to undo his latest prison sentence, arguing that the district court's view of the statutory revocation authority granted it by 18 U.S.C. § 3583(e)(3) means defendants like him can be trapped in endless cycles of imprisonment and release. We don't, however, read the statute either to forbid the district court's latest sentence — or to authorize the dire result Mr. Hernandez foresees.

The origins of the current dispute take us back to 2004 when Mr. Hernandez was convicted of possessing an unregistered firearm. *See* 26 U.S.C. §§ 5861(d) & 5871. For this crime, the district court sentenced him to forty-six months in prison followed by three years of supervised release. While there's no evidence Mr. Hernandez had any trouble as a prisoner, there's no question he had difficulty with supervised release. Soon after he finished his assigned prison term, Mr. Hernandez violated the terms imposed on his supervised release. Invoking the authority granted to it by 18 U.S.C. § 3583(e)(3), the district court responded by revoking Mr. Hernandez's supervised release and requiring him to serve six more months in prison followed by a new term of supervised release.

But rather than marking the end of it all, this turned out to be just the beginning. When Mr. Hernandez violated the terms of his new supervised release order, the district court sentenced him to three more months in prison and another term of supervised release. Mr. Hernandez then proceeded to violate the terms of

*that* supervised release, and the district court responded with another twelve-month prison sentence and another (now fourth) term of supervised release. After Mr. Hernandez violated the terms of this latest supervised release order, too, the court ordered him to serve a longer term in prison — eighteen months, this time — but no more supervised release.

In this appeal, Mr. Hernandez seeks to undo the district court's final, eighteen-month prison sentence. He argues that the sentence exceeds the authority granted to the district court by 18 U.S.C. § 3583(e)(3), pointing us in particular to the italicized "except that" clause:

> (e)  The court may . . . (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of release, *except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.*

18 U.S.C. § 3583(e)(3) (italics added). Of course, Mr. Hernandez admits, his current term of incarceration is only eighteen months, and so itself within the "except that" clause's apparent two year maximum for class C felons like himself. But, Mr. Hernandez adds, he's entitled to credit — credit for all the prior prison terms he's served for violating supervised release orders. Aggregating those

terms (six months for his first violation; three months for his second; and twelve for his third), he has already served twenty-one months in prison for violating the district court's supervised release orders.  Because of this, he says, the district court could not lawfully sentence him to more than three additional months in prison on his latest revocation.  And it is for this reason, he submits, we must vacate the district court's current eighteen-month prison sentence.

We cannot agree.  The "except that" clause Mr. Hernandez focuses on surely limits the length of prison time a district court may authorize for supervised release violations.  But just as surely it says a court may not require a class C felon like Mr. Hernandez to serve more than two years "*on any such revocation*." *Id.* (emphasis added).   And the ordinary and natural meaning of the word "any" is straightforward enough — suggesting "every," "all," or "one or another" taken at random.  Webster's Third New International Dictionary 97 (2002).  So for *every*, *all*, or *one or another* of Mr. Hernandez's revocations, the clause's plain language creates a new and independent two-year incarceration limit.  To hold otherwise — to arrive at the competing interpretation Mr. Hernandez urges — would require us to mangle the "except that" clause's express terms.  We would need either to ignore the term "any such revocation" or to adorn it with new language such as: "provided, however, the district court should subtract from the two-year period any time already served."  None of this, however, is what the statute says.

Mr. Hernandez replies that this court and others *used* to read the "except that" clause just as he does. *See*, *e.g.*, *United States v. Swenson*, 289 F.3d 676, 677 (10th Cir. 2002); *United States v. Jackson*, 329 F.3d 406, 407-08 (5th Cir. 2003) (collecting cases). But he also acknowledges (as he must) that this was *before* Congress added the words "on any such revocation" to the statute in 2003. Without those words, it was undoubtedly reasonable to read the "except that" clause as requiring a district court to aggregate and take account of all prior prison terms — to impose no more than a *total* of two years in prison for revoked class C felons like Mr. Hernandez. But those words, once added to the statute, cannot be elided, passed over, ignored. Congress was presumably aware of judicial decisions allowing aggregation when it adopted its 2003 amendment — and its decision to change § 3583 to impose a two-year prison term for class C felons *on any such revocation* was just as presumably designed to do *something*. And something the amendment did, by its plain terms upending existing case law and bringing to an end the aggregation Mr. Hernandez seeks and promotes. Indeed, every circuit to have addressed the "except that" clause's meaning *after* Congress's adoption of the 2003 amendment has adopted this very understanding, acknowledging in the process (as we must with respect to *Swenson*) that the amendment has superseded earlier controlling circuit case law. *See*, *e.g.*, *United States v. Hampton*, 633 F.3d 334, 338 & n.1 (5th Cir. 2011); *United States v. Epstein*, 620 F.3d 76, 80 (2d Cir. 2010); *United States v. Knight*, 580 F.3d 933,

- 5 -

938-40 (9th Cir. 2009); *United States v. Lewis*, 519 F.3d 822, 825 (8th Cir. 2008); *United States v. Williams*, 425 F.3d 987, 989 (11th Cir. 2005) (in dicta); *United States v. Tapia-Escalera*, 356 F.3d 181, 188 (1st Cir. 2004) (in dicta).

Having said this much about the statute's plain language, it's important to emphasize what we're not saying about it. For example, we offer no view on how the language in § 3583(e)(3) *preceding* the "except that" clause operates. That language allows a district court to require the defendant "to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release." One might try to suggest that *this* language requires a district court to aggregate all prison terms served on revocation and limit total prison time to the period of supervised release authorized by statute for the underlying offense (a three-year period for class C felonies like the one Mr. Hernandez committed, see § 3583(b)(2)). At least one circuit has addressed — and rejected — this argument. *See Hampton*, 633 F.3d at 338. But it isn't one we are asked to resolve today.

Another possible complication arises *within* the "except that" clause. There, the length of time a district court may authorize in prison for each revocation depends on the nature of the "*offense* that resulted in the term of supervised release." (Emphasis added.) Mr. Hernandez presses this appeal on the express understanding that the term *offense* as used in § 3583(e) refers to his underlying criminal conviction, and that very well may be exactly right. *See*

- 6 -

*Tapia-Escalera*, 356 F.3d at 185; *Johnson v. United States*, 529 U.S. 694, 701 (2000).  Indeed, we have previously assumed it is, just as we do today.  *See United States v. Kelley*, 359 F.3d 1302, 1303 n.1 (10th Cir. 2005); *Swenson*, 289 F.3d at 677.  But if the "*offense* that resulted in the term of supervised release" refers instead to a *prior* violation of supervised release, one might try to argue that the statutory limit on jail time for second and successive violations is just one year.  *See* § 3583(e)(3) (when the "offense that resulted in the term of supervised release" is not a Class A, Class B, Class C, or Class D felony, "a defendant whose term is revoked . . . may not be required to serve on any such revocation . . . more than one year").  We highlight this complication not to answer it, but only and again to spell out the boundaries of today's battle.

Mr. Hernandez does, however, pursue another line of argument we must still address in this appeal.  Given our attention to the plain language of the 2003 amendment, he contends, we should also look to the circumstances surrounding its adoption.  As it turns out, the amendment was adopted as part of the PROTECT Act — a piece of legislation aimed primarily at deterring child sexual abuse — and the specific portion of the legislation encompassing the amendment was entitled "Supervised Release Terms for Sex Offenders."  Pub. L. No. 108-21, § 101, 117 Stat. 650, 650 (2003).  Informed by this background, Mr. Hernandez argues, we should infer an intent by Congress to do away with aggregation in the "except that" clause *only* when it comes to sex offenders.  Perhaps *sex offenders*

no longer get the benefit of aggregation, he says, but *other types of offenders* (such as himself) should continue to do so.

Selectively enforcing a statute's plain terms is not something courts generally do, and something we cannot do in this case. The plain language of the 2003 amendment clearly and expressly applies to *all* offenders on *any* revocation. It bears no exception or limitation. While the title of the legislation embodying the amendment does suggest an underlying congressional concern with sex offenders — and while the legislative titles may sometimes be helpful when interpreting ambiguous statutory language — it is a cardinal rule of statutory interpretation (and well known to Congress) that courts will not use legislative captions and titles to "limit the plain meaning of [the statutory] text" Congress adopts. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (internal quotation omitted); *Carter v. United States*, 530 U.S. 255, 267 (2000) ("[T]he title of a statute is of use only when it sheds light on some ambiguous word or phrase in the statute itself."). It is just as settled (and known to Congress) that courts will not "restrict the unqualified language of the statute to [address only] the particular evil that Congress was trying to remedy." *Brogan v. United States*, 522 U.S. 398, 403 (1998); *Epstein*, 620 F.3d at 80. Where the statutory language is plain — and plain here it is — that language controls as written, without regard to titles or judicial perceptions (or possible inadvertent misperceptions) of legislative purpose. The legislative art is, after all, one of compromise and

"departing from a precise statutory text may do no more than disturb a carefully wrought legislative compromise" rather than to preserve or effect it. *HRI v. EPA*, 608 F.3d 1131, 1158 (10th Cir. 2010) (en banc) (internal quotation marks omitted).

Mr. Hernandez closes his appeal by raising the specter of a "never ending cycle of [successive] revocations" flowing from the district court's reading of § 3583(e)(3). Opening Br. at 7. Of course, this specter couldn't fully materialize in his case given that the district court's latest challenged sentence does not include any additional term of supervised release. But, Mr. Hernandez says, there's nothing to stop the problem from arising in *other* cases. Other defendants like him face the real prospect of life in prison for revocation after revocation, all for original convictions carrying relatively brief maximum prison terms. And such a result, he suggests, is an "absurd" one that should compel us a different (preferably his) reading of § 3583(e)(3). *See generally United States v. Amer. Trucking Ass'ns*, 310 U.S. 534, 543-44 (1940); *McNeill v. United States*, 131 S. Ct. 2218, 2223 (2011).

But whatever other problems attend this line of argument, it suffers from a faulty premise. Even assuming § 3583(e)(3) does nothing to foreclose the possibility of endless cycles of prison and supervised release, a near neighboring statutory subsection does — ensuring that, in cases like Mr. Hernandez's, the

specter of a "life of imprisonment" will and can remain no more than that. Opening Br. at 12.

How?  Under § 3583(h), the amount of supervised release a district court can impose as part of any revocation sentence is limited to "the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, *less any term of imprisonment that was imposed upon revocation of supervised release.*"  18 U.S.C. § 3583(h) (emphasis added).  This language — left unamended in 2003 and thus quite unlike § 3583(e)(3) — *does* (expressly) require a district court to aggregate and credit all prior prison terms when determining the maximum amount of supervised release it can impose for any revocation.  So as a defendant serves more and more time in prison for each revocation, a district court can impose less and less time on supervised release.  Once a defendant serves in prison a total amount of time that is more than the "term of supervised release authorized by statute" — at most three years for a class C felon like Mr. Hernandez pursuant to § 3583(b)(2) — he can no longer be placed on supervised release at all.  And because he can't be *placed* on supervised release there's no further chance he might *violate* supervised release.

Mr. Hernandez's case itself illustrates the point.  He's now been ordered to serve a total of thirty-nine months in prison for his successive supervised release violations.  Because thirty-nine months is, of course, greater than three years, the

district court could not have sentenced him to any more time on supervised release under § 3583(h) after his latest revocation.  The law simply doesn't allow it.  There is no more supervised release available for the court to issue or Mr. Hernandez to violate as a matter of law.  So as endless as Mr. Hernandez's cycle of revocation and release may have once seemed, it, like all things, must and does come to an end.[*]

The judgment of the district court is affirmed.

---

[*] How subsection (h) might interact with subsections (j) and (k), where Congress has authorized lifetime terms of supervised release for those convicted of terrorism and certain sex offenses (offenses not at issue in this case) is a question we leave for another day. One last question we do have to address, however, concerns the procedural reasonableness of Mr. Hernandez's sentence. He says the district court did not adequately explain its reasons for its eighteen-month sentence.  But Mr. Hernandez didn't object at his sentencing to the adequacy of the district court's statement of reasons  — and because of this he must satisfy the taxing plain error standard of review.  *United States v. Begaye*, 635 F.3d 456, 470 (10th Cir. 2011).  Under this standard, Mr. Hernandez bears the burden of showing (among other things) a reasonable probability that "but for the claimed error, [his] sentence would be different." *Id.* (internal quotation and alterations omitted.)  This, however, is a burden Mr. Hernandez cannot meet.  He is unable to offer us any reason to think that, had the district court been required to say more, it would have given him a more forgiving sentence.  If anything, the contrary seems more likely.  By the time of his *fourth* revocation, it is apparent from the record that the district court felt the need to respond by authorizing more, not less, prison time than it had tried before.