O'BRIEN, Circuit Judge.
Between 2006 and 2010, Shannon Porter used the TurboTax software program to electronically file 123 false tax returns with the Internal Revenue Service (IRS) requesting $357,361 in refunds. The returns contained accurate taxpayer identification information which Porter either stole or purchased from the taxpayer or a third party. However, the returns falsely reported the taxpayer to be self-employed[1] and as having disabled dependents in order for the taxpayer to be eligible for a refund. Although the IRS rejected many of the returns and requested refunds, it paid out $180,397 to Porter, which she promptly spent. For this conduct, she pled guilty to making a false statement to the United States in violation of 18 U.S.C. § 287 and was sentenced to 48 months imprisonment to be followed by a three-year term of supervised release. She completed her prison sentence but her release was short-lived.
In a mere five weeks, she violated the conditions of supervised release by, among other things, stealing $2,964.92 worth of merchandise from various stores in a local *1178 mall. The judge revoked her supervised release and sentenced her to 24 months imprisonment to be followed by a new 12-month term of supervised release. A month after her release from that prison term, she again violated the terms of her release, this time by stealing expensive sunglasses from a local optical store. The judge again revoked her supervised release and sentenced her to 24 months imprisonment; no new term of supervised release was imposed.[2]
To keep track of the various sentences for discussion purposes, a simple table is helpful:
Imprisonment Sentence Supervised Release Term Original Conviction 48 months 36 months* First Revocation 24 months 12 months** Second Revocation 24 months none * Served approximately 7 weeks before arrest ** Served approximately 5 weeks before arrest
* Served approximately 7 weeks before arrest
** Served approximately 5 weeks before arrest
Porter challenges her most recent sentence (24 months in prison, but no new term of supervised release). Before we decide that issue, we must first determine whether Porter waived her right to bring this appeal.
A. Waiver of Appellate Rights
Porter's original plea to making a false statement against the United States resulted from a plea agreement containing a waiver of appellate rights. Relevant here, Porter "waive[d] the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a)," but reserved "the right to appeal from a sentence which exceeds the statutory maximum." (R. Vol. 1 at 41.) The government seeks to enforce that waiver to this appeal-an appeal not from the original sentence but from the sentence imposed following the second revocation of supervised release. It tells us (1) Porter's appeal falls squarely within the scope of the waiver, (2) she knowingly and voluntarily waived her appellate rights, and (3) enforcing the waiver would not result in a miscarriage of justice. See United States v. Hahn , 359 F.3d 1315, 1325 (10th Cir. 2004). That strikes us as improper.
We interpret a plea agreement as we would any contract and in light of "what the defendant reasonably understood when [s]he entered [her] plea." United States v. Lonjose , 663 F.3d 1292, 1297 (10th Cir. 2011) (quotation marks omitted). Waivers of appellate rights in a plea agreement are "to be construed narrowly." Id .
*1179 In determining their scope, any ambiguity "will be read against the government and in favor of [the] defendant's appellate rights." Id . (quotation marks omitted).
Lonjose involved a negotiated guilty plea to one count of sexual abuse of a minor in Indian Country. Id . at 1295. In the plea agreement, Lonjose "knowingly waive[d] the right to appeal any sentence within the statutory range applicable to the statute(s) of conviction." Id . (quotation marks omitted). The judge sentenced him to 51 months in prison to be followed by three years of supervised release. Id . Although the judgment listed various conditions of supervised release, it failed to include a condition prohibiting or limiting Lonjose's contact with minors. Id . at 1296. Before his release from prison, the probation officer moved to modify the conditions of supervised release to include a no-contact with minors provision. Id . The judge granted the motion; Lonjose appealed. Id . at 1296-97. The government argued the appeal was foreclosed by the waiver of appellate rights in the plea agreement. Id . at 1297.
We concluded Lonjose's appeal from the modification of the conditions of supervised release fell outside the scope of his appellate waiver. Id . at 1297. "[The] waiver of the right to appeal 'any sentence' encompasses only the right to appeal the original sentence imposed at sentencing and memorialized in the judgment," and does not encompass the right to appeal a subsequent modification of the conditions of supervised release. Id . at 1302. That is because "there is a distinct 'right to appeal' which comes into existence when the judgment of conviction is filed and expires after 14 days (or up to 44 days if the government appeals). [And] it is this distinct right to appeal that a defendant would reasonably understand he is waiving with a generic appellate waiver such as the one in this case." Id . at 1299. Moreover, although a modification of supervised release conditions "create[s] a right of appeal that is separate from a defendant's right to appeal his original sentence," "[t]he language of [Lonjose]'s appellate waiver ... does not include waiver of the separate right to appeal [from such modification]." Id . at 1300. We see no daylight between that case and this one.
Porter waived the right to directly appeal from "the ... sentence," which is narrower than Lonjose's appellate waiver of "any sentence." By doing so, Porter would have reasonably understood at the time of her guilty plea that she was waiving only discretely expressed rights, notably the right to directly appeal from the sentence imposed in accordance with that plea (the original sentence of 48 months). Like many appellate waivers, Porter's waiver included the right to collaterally attack her conviction and sentence under 28 U.S.C. § 2255, except for ineffective assistance of counsel claims "which challenge the validity of the guilty plea or [the] waiver." (R. Vol. 1 at 41.) She also expressly waived the right to have her sentence modified under 18 U.S.C. § 3582(c) except upon a motion by the government based on her substantial assistance. Importantly, Porter's waiver makes no mention of the right to appeal from a sentence imposed upon a future revocation of supervised release, even though a revocation of supervised release involves new factual findings by the judge and creates new procedural protections, including the separate right to appeal from the revocation sentence. See 18 U.S.C. § 3583(e)(3) (requiring judge to find by a preponderance of the evidence that the defendant violated a condition of supervised release before revoking that release); Fed. R. Crim. P. 32.1 (requiring initial appearance of defendant accused of violating supervised release, a preliminary hearing (unless waived) to determine whether there is probable cause to believe *1180 a violation of supervised release occurred, and a revocation hearing (unless waived) wherein the defendant is entitled to, inter alia , an opportunity to appear, present evidence, and representation by an attorney); see also United States v. McBride, 633 F.3d 1229, 1230 (10th Cir. 2011) (reviewing sentence imposed upon revocation of supervised release).
Had the parties wished to include sentences upon revocations within the scope of the waiver, they certainly could have done so. See United States v. Gordon , --- F. App'x ----, No. 18-1300, 2018 WL 3650180, at * 1-2 (10th Cir. 2018) (unpublished) (concluding Gordon had waived his right to appeal from the sentence imposed following the revocation of supervised release where appellate waiver in original plea agreement stated he "waives any right to appeal ... the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release ." (quotation marks omitted) (emphasis added) ). They did not.
We are not alone in our assessment. Other circuits have likewise decided that an appellate waiver in an original plea agreement does not extend to the right to appeal from a revocation of supervised release or the sentence entered upon such revocation absent specific language to that effect. See United States v. Carruth, 528 F.3d 845, 846 (11th Cir. 2008) ("[W]e reject the government's argument that the appeal waiver in Carruth's original plea agreement extends to his later revocation of supervised release. There was no specific language in the original plea waiver indicating that Carruth's willingness to waive his right to appeal from a sentence entered in accordance with the original plea was also a waiver of his right to appeal from his future supervised release revocation"); see also United States v. Murphy , 689 F. App'x 180, 182-83 (4th Cir. 2017) (unpublished) ("Murphy also seeks to appeal the 24-month sentence that he received following the revocation of his supervised release. As that issue pertains to a separate conviction and sentence, the waiver in his [original] plea agreement does not bar him from challenging that judgment on appeal.").
This appeal is not within the scope of Porter's appellate waiver.
B. Revocation of Supervised Release Sentence
A sentence entered upon revocation of supervised release typically consists of two parts: (1) a new sentence of imprisonment and (2) a new term of supervised release.[3] The parts are discrete, but Porter conflates them.
She argues the 24-month sentence imposed upon the second supervised release revocation violates 18 U.S.C. § 3583(h)'s aggregation requirement. According to her, "to arrive at the allowable period of supervised release" that could be imposed upon the second revocation, § 3583(h) required the district court to subtract the 24 months of imprisonment imposed upon the first revocation of supervised release from the maximum term of supervised release for making a false statement to the United States (a Class D felony)-three years (36 months). (Appellant's Op. Br. at 10.) As a result, she tells *1181 us the judge "was authorized to impose a new supervised release sentence of only approximately 12 months [36 months minus 24 months]" upon the second revocation. Id . "[The judge] exceeded [her] authority by imposing a 24-month term of supervised release." Id . Porter is either confused or deliberately clumsy. In any event, she is mistaken.[4]
She complains about the "24-month term of supervised release" entered upon the second revocation. But she is obviously complaining of the 24-month term of imprisonment imposed upon the second revocation because no new term of supervised release was entered. A 24-month term of imprisonment, however, was imposed. That term of imprisonment did not violate § 3583(h), which provides:
When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release .
(Emphasis added.)
Porter is correct that this statute contains an aggregation requirement, i.e., a court must aggregate and give a defendant credit for all terms of imprisonment imposed upon a revocation of supervised release. However, § 3583(h) speaks only to the length of the term of supervised release to be imposed following a revocation. See United States v. Hunt , 673 F.3d 1289, 1293 (10th Cir. 2012) ; see also United States v. Hernandez , 655 F.3d 1193, 1198 (10th Cir. 2011) ( § 3583(h)"require[s] a district court to aggregate and credit all prior prison terms when determining the maximum amount of supervised release it can impose for any revocation" (emphasis added) ). Obviously, Porter cannot complain of the term of supervised release imposed here because no new term of supervised release was imposed.
It is necessary to separately evaluate the additional imprisonment permitted upon a violation of supervised release. As to the 24-month term of imprisonment entered following Porter's second revocation, § 3583(e)(3) allows a court, after considering certain factors in 18 U.S.C. § 3553(a), to
revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more *1182 than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.
18 U.S.C. § 3583(e)(3) (emphasis added).
Because Porter is a Class D felon, see infra n.5, the maximum term of imprisonment authorized by § 3583(e)(3) for the second revocation is two years (24 months), which is what the judge imposed. Unlike subsection (h), subsection (e)(3) contains no aggregation requirement. See Hunt , 673 F.3d at 1293 ("The plain language of § 3583(e)(3) does not require courts to aggregate prior revocation imprisonment sentences when calculating a new [imprisonment] sentence for a violation of supervised release conditions."). That is because each violation of supervised release is separately punishable as a "breach of trust." See supra n.3. For every revocation, a judge may impose a new term of imprisonment up to the maximum listed in subsection (e)(3); she need not subtract from the maximum any time already served. See Hernandez , 655 F.3d at 1196. Porter is simply wrong if she is suggesting the judge was authorized to impose at most a 12-month term of imprisonment because the 24-month prison sentence imposed upon the first revocation was required to be subtracted from the statutory maximum term of supervised release for the underlying offense (36 months). Hunt , 673 F.3d at 1291-93 (rejecting similar argument); see also Hernandez , 655 F.3d at 1195-95 (same). Again, § 3583(e)(3), unlike § 3583(h), contains no such aggregation requirement.
While § 3583(h) does not help her avoid a term of imprisonment, it does afford her some relief. It prevented the judge from imposing a new term of supervised release upon her latest revocation.[5] And without a new term of supervised release, there can be no release to violate.[6] Hernandez , 655 F.3d at 1198.
AFFIRMED .

By claiming self-employed status, Porter could deduct business expenses from income and, more importantly, avoid detection as most fraudulent tax returns are discovered by matching the W-2 wage statement submitted by the taxpayer with that submitted by her employer. Obviously, self-employed taxpayers do not have a third-party employer.

To those lacking a full knowledge of the facts, Porter's repeated incarceration may seem unnecessarily harsh. The opposite is true. It was, appropriately, due to her continued violations of the conditions of supervised release, her extensive criminal history (starting at age 11) involving fraud and larceny, and her utter lack of effort toward rehabilitation. Unfortunately, she has repeatedly blamed her extensive criminal behavior, at least in part, on intellectual disability (her words, "mental retardation"). (R. Vol. 1 at 125, 127, 150.) The district judge squarely addressed the matter, observing that her problem did not square with the level of intellect required to commit the underlying offense (tax fraud) or with the letter Porter sent to her. The judge said, "There's nothing disabled or mentally slow or less than average about you. In fact, the ... letter I received [from you] is perfect penmanship, grammar, spelling, and a highly educated vocabulary .... You write better than a lot of lawyers in this court." (R. Vol. 3 at 444.) Porter received condign punishment.

A violation of a court-imposed condition of supervised release constitutes a " 'breach of trust.' " USSG Ch.7, Pt. A, intro. comment. (n.3(b) ). Sentences imposed upon revocations of supervised release are intended primarily to sanction that breach of trust, not "the particular conduct triggering the revocation." Id . However, judges may take into account, "to a limited degree, the seriousness of the underlying violation and the [defendant's] criminal history. ..." Id .

In her reply brief, Porter concedes her failure to object in the district court to the revocation sentence results in plain error review. However, in her opening brief, she suggested the standard of review may be abuse of discretion or even de novo. We need not decide the issue. "Even applying the stricter de novo standard of review," the result would be the same-there was no error, plain or otherwise. See Hjelle v. Mid-State Consultants, Inc. , 394 F.3d 873, 879 (10th Cir. 2005).

Porter's underlying offense-making a false statement against the United States in violation of 18 U.S.C. § 287 -carries a statutory maximum term of imprisonment of five years, making it a Class D felony, see 18 U.S.C. § 3559(a)(4). The statutory maximum term of supervised release which may be imposed on a Class D felon is three years (36 months). 18 U.S.C. § 3583(b)(2). As a result, the length of the term of supervised release that the judge was authorized to impose under § 3583(h) upon the second revocation was 36 months "less any term of imprisonment that was imposed upon revocation of supervised release." Because her current term of imprisonment (24 months) and the prison term imposed upon the first revocation (24 months) exceeded the statutory maximum term of supervised release (36 months), no new term of supervised release was or could be imposed under § 3583(h). See Hernandez , 655 F.3d at 1198 (aggregating and crediting defendant with all prior prison terms imposed upon revocation as well as with the term of imprisonment imposed upon latest revocation in deciding that no new term of supervised release was authorized to be imposed for latest revocation); United States v. Bull , 459 F. App'x 795, 799 (10th Cir. 2012) (unpublished) ("The total amount of prison time for revocation of supervised release plus the new supervised release term ordered by the court cannot exceed the maximum amount of supervised release time that the district court could have ordered for the original offense."); see also United States v. Rodriguez , 775 F.3d 533, 537 (2d Cir. 2014) ("[A] plain reading of the reference to 'any term of imprisonment' in [§ 3583(h) ] must include the prison term in the current revocation sentence together with all prison time served under any prior revocation sentences imposed with respect to the same underlying offense."); United States v. Maxwell , 285 F.3d 336, 341 (4th Cir. 2002) ("In sum, we hold the plain meaning of the phrase 'less any term of imprisonment that was imposed upon revocation of supervised release' in § 3583(h) is that the prison term in the current revocation sentence, together with all prison time imposed under any prior revocation sentence or sentences, must be aggregated.").

Porter also suggests her 24-month term of imprisonment violates the Fifth and Sixth Amendments because it exceeds the statutory maximum. But, as we have explained, 24 months is the statutory maximum. See 18 U.S.C. § 3583(e)(3). Moreover, she cites United States v. Haymond , 869 F.3d 1153 (10th Cir. 2017), which held § 3583(k) to be unconstitutional. Haymond is inapplicable here because § 3583(k) played no role in Porter's sentence.