**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRYCE D. DRAPER,

    Defendant - Appellant.

No. 20-3130
(D.C. No. 2:15-CR-20035-JWL-JPO-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

This matter is before the court on the government's motion to enforce the appeal waiver in Bryce D. Draper's plea agreement. We grant the government's motion and dismiss the appeal.

**BACKGROUND**

In 2016, Draper pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). His plea agreement included a broad appeal waiver, which indicated he "knowingly and voluntarily waive[d] any right to appeal . . . any

---

[*] This panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

matter in connection with this prosecution, his conviction, or the components of the sentence . . . , including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release." Mot. to Enforce attach. B at 6. The district court sentenced him to 30 months' imprisonment, followed by 3 years' supervised release. In May 2017, Draper was released from prison based on time served and began his term of supervised release.

In 2018, the district court determined that Draper violated several conditions of his supervised release. The court revoked his supervised release and sentenced him to 18 months' imprisonment, followed by 1 year of supervised release. Draper appealed, and we affirmed. *United States v. Draper*, 768 F. App'x 828, 830 (10th Cir. 2019). In 2020, after Draper completed his additional imprisonment, the district court found that he again violated conditions of his supervised release. The court revoked his supervised release and sentenced him to 21 months' imprisonment, with no additional supervised release. Draper appeals both his revocation and the sentence imposed.

## DISCUSSION

The government has moved to enforce the appeal waiver in Draper's plea agreement under *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam). Under *Hahn*, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.* at 1325. Draper, through counsel, challenges

only the first two factors, so we do not address the miscarriage-of-justice factor. *See United States v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005) (recognizing that this court need not address a *Hahn* factor that the defendant does not contest).

**A. Scope of the Waiver**

Draper first argues that his appeal from his second revocation of supervised release does not fall within the scope of his appeal waiver. We disagree.

"When construing an appellate waiver, we apply well-established contract principles and examine the plain language of the agreement." *United States v. Taylor*, 413 F.3d 1146, 1151 (10th Cir. 2005) (internal quotation marks omitted). "[W]e strictly construe the scope of the appellate waiver and interpret any ambiguities against the Government and in favor of a defendant's appellate rights." *Id.* at 1151-52 (internal quotation marks, brackets, and ellipsis omitted). "But we do not hesitate to hold a defendant to the terms of a lawful plea agreement." *United States v. Sandoval*, 477 F.3d 1204, 1206 (10th Cir. 2007) (internal quotation marks omitted).

Draper contends his waiver does not reach the present appeal because revocation of supervised release "is a separate post-conviction proceeding that provides a separate right of appeal." Resp. at 5 (internal quotation marks omitted). But as we have recognized, "where a plea agreement includes more precise language describing the rights waived by the defendant," a waiver can extend beyond a direct appeal from a conviction and can encompass post-conviction proceedings. *United States v. Lonjose*, 663 F.3d 1292, 1300 n.9 (10th Cir. 2011).

3

Draper's waiver included precise language and specified that he "waive[d] any right to appeal . . . any matter in connection with this prosecution, his conviction, or the components of the sentence . . . *as well as any sentence imposed upon a revocation of supervised release*."  Mot. to Enforce attach. B at 6 (emphasis added).  We have recognized that a waiver with this exact language encompasses an appeal from the revocation of supervised release.  *See United States v. Porter*, 905 F.3d 1175, 1180 (10th Cir. 2018) (observing that we have enforced a waiver in an appeal from the revocation of supervised release where the "waiver in [the] original plea agreement" specified the defendant "'waive[d] any right to appeal . . . the sentence to be imposed herein, including the length and conditions of supervised release, *as well as any sentence imposed upon a revocation of supervised release*'" (internal quotation marks omitted)).[1]

By its plain terms and consistent with *Lonjose* and *Porter*, the appeal waiver in Draper's plea agreement covers the appeal of a sentence following revocation of supervised release.  Draper argues, however, that his *second* revocation of supervised release is too attenuated from his original judgment and the plea agreement containing the waiver.  *See* Resp. at 5-7 (noting "[t]he July 2020 judgment is not the revocation of the supervised release imposed with the sentence for the 2016 conviction," and contending "the appeal waiver from the December 2016 agreement

_____

[1] We declined to enforce the waiver in *Porter* because the waiver did not include "specific language" to bar an appeal from the revocation of supervised release and the parties could have "include[d] sentences upon revocations within the scope of the waiver" if they had so desired.  905 F.3d at 1180.

4

does not cover this third-round sentencing proceeding"). But he cites no authority to support this proposition, and we are aware of none.

Draper plainly waived his right to appeal "any sentence imposed upon a revocation of supervised release," Mot. to Enforce attach. B at 6, not merely, as he alleges, the initial "imposition of supervised release" and "the revocation of *that* supervised release," Resp. at 7 (emphasis added). Accordingly, we conclude that Draper's appeal from his second revocation of supervised release falls within the scope of his appeal waiver.

### B. Knowing and Voluntary Waiver

Draper also argues he did not knowingly and voluntarily waive his appeal rights. We disagree.

For this *Hahn* factor, we look to the language of the plea agreement and the Federal Rule of Criminal Procedure 11 plea colloquy to assess whether a waiver of appellate rights was knowing and voluntary. *See United States v. Rollings*, 751 F.3d 1183, 1188 (10th Cir. 2014). "[E]ither the express language of the plea agreement, if sufficiently clear, detailed, and comprehensive, or the probing inquiry of a proper Rule 11 colloquy could be enough to conclude the waiver was knowing and voluntary. But the synergistic effect of both will often be conclusive." *United States v. Tanner*, 721 F.3d 1231, 1234 (10th Cir. 2013) (per curiam).

The plea agreement, which Draper signed, explicitly states that he "knowingly and voluntarily waive[d] any right to appeal . . . any sentence imposed upon a revocation of supervised release." Mot. to Enforce attach. B at 6. At the change-of-

5

plea hearing, the prosecutor read verbatim that passage from the agreement, *id.* attach. A at 15, and Draper and his counsel confirmed that was their "understanding of the plea agreement," *id.* at 16. During the Rule 11 colloquy, Draper acknowledged that he had "gone over" the appeal waiver with his attorney and that he wanted the court to approve the waiver "as part of [his] plea agreement." *Id.* at 18. He also acknowledged he "could be imprisoned for an additional term of imprisonment" if he "violate[d] the conditions of [his] supervised release, and it's revoked or taken away from [him]." *Id.* at 9.[2] Finally, Draper indicated he understood that, subject to exceptions stated in the waiver, he was "giving up any right [he] might have to appeal *anything having to do with [his] case*." *Id.* at 18 (emphasis added).

Draper contends that if, as we concluded above, his appeal falls within the scope of his waiver, "[n]othing in the plea colloquy suggests he knew he might be waiving that scope of appeals." Resp. at 7. He alleges that "[a]t most[,] the colloquy shows he was aware that he could be sentenced to supervised release[] and . . . was waiving the right to appeal the terms of *that supervised release*." *Id.* (emphasis added). But the waiver, as stated in the plea agreement and confirmed during the colloquy, is not so limited. Instead, it clearly indicates Draper knowingly and voluntarily waived his right to appeal, among other things, "*any sentence* imposed upon *a revocation* of supervised release." Mot. to Enforce attach. B at 6 (emphasis

---

[2] At sentencing, Draper, through counsel, "concur[red] with [the prosecutor's] request for the three years of supervised release." Mot. to Enforce attach. C at 15.

added).  We are not persuaded that his waiver as to "the future chain of supervised release and revocations" was "inadvertent[]."  Resp. at 7.[3]

Accordingly, we conclude that Draper has failed to carry his burden of demonstrating that he did not knowingly and voluntarily waive his appeal rights.

### CONCLUSION

Draper's appeal falls within the scope of his appeal waiver, and he knowingly and voluntarily waived his appellate rights. We therefore grant the government's motion to enforce Draper's appeal waiver and dismiss this appeal.

Entered for the Court
Per Curiam

---

[3] To the extent Draper suggests his waiver was not knowing and voluntary because it subjected him to an unreviewable endless cycle of supervised release and revocations, we note that the "future chain" he describes, Resp. at 7, was at all times finite and governed by statute.  *See United States v. Hernandez*, 655 F.3d 1193, 1198 (10th Cir. 2011) (noting that 18 U.S.C. § 3583(h) "forecloses the possibility of endless cycles of prison and supervised release" and that even when a defendant has had multiple revocations of supervised release, the amount of supervised release a district court can impose in connection with any revocation is limited by § 3583(h) to "the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release" (emphasis omitted)); *see also United States v. Collins*, 859 F.3d 1207, 1210 (10th Cir. 2017) (stating "as to not only the first but also second and subsequent revocations, § 3583(e)(3) imposes a statutory maximum prison term based on the original criminal offense for which the defendant was convicted").