FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES HAROLD YOUNG,

    Defendant - Appellant.

No. 22-3029
(D.C. No. 5:19-CR-40082-HLT-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

James Harold Young appeals the district court's revocation of his supervised release under 18 U.S.C. § 3583(e). He asserts that the court erred in concluding that he violated 18 U.S.C. § 111 by assaulting a federal officer. He contends there was not sufficient evidence to find intent. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  **BACKGROUND**

Mr. Young failed to register as a sex offender in violation of 18 U.S.C. § 2250 and later pled guilty to that offense.  The district court imposed a five-year term of supervised release.  The court later revoked Mr. Young's supervised release and imposed a three-year term of supervised release with a mandatory condition that he not commit another federal, state, or local crime.

On December 23, 2021, Mr. Young went to the federal courthouse in Topeka, Kansas for a scheduled meeting with a probation officer.  He entered the courthouse with his bicycle, which he propped against a wall, and walked toward the security station.  Video No. 1 at 10:57:30-33; Video No. 1A at 10:57:34-51.[1]  A court security officer ("CSO") told Mr. Young that he could not leave his bicycle inside.  Mr. Young retrieved his bicycle, swiftly exited the courthouse, ran a few steps, and threw the bicycle away from the building.  Video No. 1 at 10:58:16-20; Video No. 1A at 10:57:52-10:58:16.  He then re-entered the courthouse, placed his bag down, and removed his shoes.  Video No. 1 at 10:58:21; Video No. 1A at 10:58:33-55.

Because Mr. Young did not have photo identification, a CSO denied him entry and directed him to return once he obtained proper identification and calmed down.  Mr. Young placed his hands on his head and began to pace around the lobby.  Video No. 1A at 10:58:56-10:59:05.  He said something to a CSO before throwing his face

---

[1] Surveillance cameras inside and outside the courthouse recorded Mr. Young's behavior on December 23.  The video recordings do not have audio.

mask to the ground, sitting down, and putting on his shoes. *Id.* at 10:59:20-11:00:40.

He left the building and walked away. *Id.* at 11:00:41-45; Video No. 1 at

11:00:46-50. A CSO contacted the probation office and reported that Mr. Young was

acting in a belligerent and hostile manner and that he would not be allowed into the

courthouse due to his behavior and lack of identification.

Approximately 10 minutes later, Mr. Young re-entered the courthouse and

attempted to walk through the metal detector without stopping. Video No. 3 at

11:10:10-18; Video No. 3A at 11:10:17-20. Two CSOs blocked him. Video No. 3A

at 11:10:20. A physical altercation between Mr. Young and the CSOs ensued, lasting

about a minute. *Id.* at 11:10:35-11:11:37; Video No. 3 at 11:10:35-11:11:05.

Video footage shows that Mr. Young's movement caused one CSO to collide

with the metal detector. Video No. 3A at 11:10:33-35. That CSO then tried to pat

down Mr. Young before Mr. Young pulled both CSOs in another direction. *Id.* at

11:10:38-46. The CSOs were positioned on both sides of Mr. Young and tried to

stop his movement, but he collided with the metal detector. *Id.* at 11:10:46-51.

Mr. Young then pushed his way toward the door of the building where he had entered

while the CSOs attempted to hold him from both sides. Video No. 3 at 11:10:50-55.

Mr. Young then turned around, causing one of the CSOs to swing behind him. *Id.* at

11:11:00-03.

The force of Mr. Young's movement caused all three men to collide with the

metal detector again, causing it to tip over. Video No. 3A at 11:11:03-05. As the

metal detector fell to the ground, the scuffle continued. The three men then tripped

over the fallen metal detector, which flipped sideways, causing one of the CSOs to fall head-first into the X-ray machine and throwing the others to the ground. *Id.* at 11:11:06-09.

Mr. Young and the CSOs were then on the floor. As Mr. Young laid on his stomach, the CSOs attempted to subdue and handcuff him. *Id.* at 11:11:06-57. Mr. Young continued moving his arms and body, kicking his legs, and trying to stand. *Id.* Two more CSOs arrived to help. *Id.* at 11:11:57-11:12:05.

The CSOs eventually subdued Mr. Young and took him into custody. Emergency medical personnel examined the CSO who hit his head on the X-ray machine and determined he had suffered a serious head trauma, a broken finger, and an injured knee.

Mr. Young's probation officer promptly filed a petition in the district court, stating that Mr. Young had violated the terms of his supervised release. He alleged that Mr. Young had violated 18 U.S.C. § 111 by "[a]ssaulting, resisting, or impeding" the CSOs. ROA, Vol. I at 55.

The district court held an evidentiary hearing in February 2022 to determine whether Mr. Young had violated the terms of his supervised release. The parties agreed that Tenth Circuit Pattern Jury Instruction 2.09 sets forth the elements for violating 18 U.S.C. § 111. The Government presented the courthouse videos from December 23 as evidence. It also called Mr. Young's probation officer, who testified about his observations based on that footage.

After presenting its evidence, the Government said it had established the elements of 18 U.S.C. § 111.  It argued that Mr. Young "forcibly resisted, opposed, and interfered with the courthouse security officers' duties when he tried to force his way past the metal detector, past the two officers and enter the building, making no attempt to go through security checks as he was required to."  ROA, Vol. III at 99. It said "[t]here was physical contact with both officers and as a result of the defendant's action, he inflicted bodily injury" on at least one of them.  *Id.* at 100.

Mr. Young's counsel challenged whether the evidence showed that he "intended to inflict or intended to threaten injury."  *Id.* at 101.  He argued that the evidence showed only that he was trying to enter the courthouse, not that he was trying to hurt someone.  *Id.*  According to counsel, "the fact that [the CSO] was hurt wasn't because [Mr. Young] did something intentionally to cause that."  *Id.* at 101-02.  He "concede[d] that [Mr. Young] used force," *id.* at 101, and acknowledged that Mr. Young "ma[d]e physical contact," *id.* at 104, but said he was "simply resisting," *id.* at 103.  The Government replied that the evidence showed Mr. Young "intended to inflict bodily injury on the[] officers when he tried to force his way past [them] standing in a closed space and then didn't stop, he kept going."  *Id.* at 105.

The district court determined that Mr. Young had violated § 111.  It explained that § 111 "makes it a crime to forcibly resist, oppose, or interfere with a federal officer while the officer is engaged in the performance of his official duties." *Id.*-at-107.  The court found that he intended to inflict injury.  It explained that "Mr. Young entered the building with a purpose, he charged towards the entry point at the

metal detector[,] [b]oth court security officers were there, [and] they engaged in a struggle at that point in time." *Id.* at 109.

Mr. Young objected to the court's finding of intent. The court responded that "for the reasons already stated," it found intent "based on the overall conduct of Mr. Young throughout the encounter, with the way he charged forward and the actions after the court security officers stopped him." *Id.* at 111.

The court revoked Mr. Young's supervised release and sentenced him to 24 months in prison and one year of supervised release. Mr. Young timely appealed.

## II. **DISCUSSION**

Mr. Young argues there was insufficient evidence to show he intended to injure the CSOs.

### A. *Standard of Review*

Under 18 U.S.C. § 3583, a district court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *United States v. Porter*, 905 F.3d 1175, 1181 (10th Cir. 2018) (quotations omitted). "We review the district court's decision to revoke supervised release for abuse of discretion." *United States v. Jones*, 818 F.3d 1091, 1097 (10th Cir. 2016) (quotations omitted). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *United States v. Piper*, 839 F.3d 1261, 1265 (10th Cir. 2016) (quotations omitted).

"A factual finding is clearly erroneous only if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* at 1270 (quotations omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse even if we would have weighed the evidence differently. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

B. *Legal Background*

Under 18 U.S.C. § 111(a), "[w]hoever … forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [a federal officer] while engaged in or on account of the performance of official duties" commits a crime. *See United States v. Disney*, 253 F.3d 1211, 1213 (10th Cir. 2001). "[A]ssault is an element of any § 111(a)(1) offense." *United States v. Wolfname*, 835 F.3d 1214, 1220 (10th Cir. 2016). Under § 111(b), a person who "uses a deadly or dangerous weapon" or "inflicts bodily injury" is subject to an enhanced penalty. 18 U.S.C. § 111(b).

Under this circuit's pattern jury instructions, a factfinder must find the following elements for a violation of § 111:

1. "[T]he defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with the person described in the indictment;"

2. "[T]he person assaulted, resisted, opposed, impeded, intimidated, or interfered with was a federal officer

7

who was then engaged in the performance of his official duty as charged;"

3. "[T]he defendant did such act[s] intentionally;" and

4. "[T]he defendant made physical contact with the federal officer" [or] "in doing such acts, the defendant . . . inflicted bodily injury."

Pattern Jury Instr. 2.09 (10th Cir. 2021) (brackets omitted and punctuation added).

## C. *Analysis*

Mr. Young argues the district court clearly erred by finding that he acted with intent. We disagree. The record supports the court's finding of intent. We are not left with a "definite and firm conviction that a mistake has been made." *Piper*, 839 F.3d at 1270 (quotations omitted). We thus affirm.

The district court found that Mr. Young "intended to inflict injury when he resisted and opposed and interfered with both officers and did not comply." ROA, Vol. III at 109. It said: "Mr. Young entered the building with a purpose, he charged towards the entry point at the metal detector. Both court security officers were there, they engaged in a struggle at that point in time." *Id.* The court explained its finding was "based on the overall conduct of Mr. Young throughout the encounter, with the way he charged forward and the actions after the court security officers stopped him." *Id.* at 111. It later reiterated its finding, saying Mr. Young "intended to inflict injury when [he] scuffled with the officers in the metal detector and thereafter." *Id.* at 132. We have carefully reviewed the record, including the video surveillance, and conclude it supports the district court's finding.

Mr. Young's arguments to the contrary are unpersuasive. He asserts that the district court's reliance on his failure to comply and his resistance was insufficient to find intent. *See* Aplt. Br. at 23. Although the court noted Mr. Young's failure to comply, it also pointed to Mr. Young's "charg[ing]" toward the metal detector, ROA, Vol. III at 109, and his "struggle" and "scuffle[]" with the CSOs, *id.* at 109, 132. The court thus did not rest its intent finding solely on Mr. Young's failure to comply.

Mr. Young also asserts that once the CSOs prevented him from entering, "all of [his] actions thereafter are resistance to being forced to the ground, not aggressions." Aplt. Br. at 26. According to Mr. Young, "the officers pushing against [him] . . . cause[d] the metal detector to fall over, and cause[d] all three men to then fall over the metal detector and to the ground." *Id.* at 24. But even if the video could be viewed that way, a reasonable factfinder also could view the video as the district court did: Mr. Young moving his body with CSOs on both sides of him, knowing his movements could harm them, and ultimately causing one CSO's injury. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. We are not "left with a definite and firm conviction that a mistake has been made." *Piper*, 839 F.3d at 1270 (quotations omitted).

The district court did not err in finding Mr. Young violated § 111, so it did not abuse its discretion in revoking Mr. Young's term of supervised release.

## III. **CONCLUSION**

We affirm the district court.

                    Entered for the Court


                    Scott M. Matheson, Jr.
                    Circuit Judge